IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LAURA JO G.,[1]

        Plaintiff,

v.

NANCY A. BERRYHILL,
Deputy Commissioner of Social Security
Administration,

        Defendant.

Case No. 6:17-cv-1293-JR

OPINION & ORDER

RUSSO, Magistrate Judge:

    Plaintiff Laura Jo G. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Benefits under the Social Security Act ("Act"). The Commissioner's decision is reversed and remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – ORDER

## PROCEDURAL BACKGROUND

On September 11, 2003, plaintiff applied for Title II disability insurance benefits, alleging disability beginning April 1, 1997. Tr. 18, 147-48. Her application was denied initially on March 19, 2014, and upon reconsideration on June 17, 2014. Tr. 91-95, 99-101. On July 1, 2014, plaintiff filed a written request for hearing. Tr. 102-03. On March 16, 2016, a hearing was held before an administrative law judge ("ALJ"). Tr. 37-63. Plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Id. At the hearing, plaintiff amended her alleged onset date to January 1, 2010. Tr. 18, 45-46.

On April 12, 2016, the ALJ issued a decision finding plaintiff not disabled. Tr. 18-34. On June 23, 2017, the Appeals council denied plaintiff's request for review. Tr. 1-5. On August 21, 2017, plaintiff filed a complaint in this Court. Pl.'s Comp. at pp. 1-2 (doc. 1).

## FACTUAL BACKGROUND

Plaintiff was born on March 1, 1954. Tr. 147. According to the amended onset date, she was 55 years old on the alleged date of disability, and 62 years old at the time of the ALJ hearing. She graduated from high school and completed two years of college. Tr. 39. She has worked as a graphic designer, a gallery salesperson, and an art instructor. Tr. 27, 57. Plaintiff alleges disability due to fibromyalgia/myofascial pain syndrome, chronic headaches, irritable bowel syndrome ("IBS"), sarcoidosis, and chronic fatigue. Tr. 18, 185.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986) (citations omitted). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon plaintiff to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish the claimant can perform other work existing in significant numbers in the national or local economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S FINDINGS

At step one of the sequential evaluation process outlined above, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Id. At step two, the ALJ determined plaintiff had the following severe impairments: IBS; fibromyalgia/myofascial pain syndrome; headaches; and history of sarcoidosis. Id.

At step three, the ALJ determined plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 22. Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except:

> [She can perform light work] with lifting and carrying 20 pounds occasionally and 10 pounds frequently, standing and walking about six hours of an eight-hour workday and sitting about six hours of an eight-hour workday. A bathroom must be on premises.

Id.

At step four, the ALJ determined plaintiff is capable of performing past relevant work as a graphic designer, in gallery sales, and as an art instructor. Tr. 27. Accordingly, the ALJ

concluded plaintiff was not disabled from January 1, 2010, through the date of the decision, April 12, 2016. Tr. 28.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) rejecting her subjective symptom testimony; (2) failing to provide legally sufficient reasons to discount the opinions of Drs. Robert Bennet, Katherine Weller, and Rodney Schaffer, as well as chiropractor Laura Adams; and (3) failing to properly credit lay-witness testimony. Pl.'s Br. at pp. 2 (doc. 12).

### I. Plaintiff's Testimony

At the March 2016 hearing, plaintiff indicated her primary symptoms preventing work include fatigue, IBS, headaches, fibromyalgia, sarcoidosis, and full-body pain. Tr. 45, 48-56. Plaintiff stated she cannot make it through the day without sleeping "for an hour or two," and she cannot sit or stand for long periods of time. Tr. 45. In addition, plaintiff indicated her IBS is painful, unpredictable, and "interferes with everything." Tr. 48, 50. Plaintiff also complained of constant severe headaches and the inability to perform small repetitive motions due to her fibromyalgia. Tr. 52-53. Further, plaintiff testified she is vulnerable to acute illnesses due to her sarcoidosis. Tr. 56. Despite these impairments, plaintiff testified she is self-employed as a Reiki practitioner and cares for her nine-month old grandchild two to three afternoons a week. Tr. 43-44, 47.

> In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. First, the ALJ must determine whether there is "'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" If the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give "'specific, clear and convincing reasons'" in order to reject the claimant's testimony about the severity of the symptoms.

Page 5 – ORDER

> At the same time, the ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." In evaluating the claimant's testimony, the ALJ may use "'ordinary techniques of credibility evaluation.'" For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct; "'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment,'"; and "whether the claimant engages in daily activities inconsistent with the alleged symptoms."
>
> While a claimant need not "'vegetate in a dark room'" in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

Molina v. Astrue, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (internal citations omitted).

Before rejecting a plaintiff's testimony, the ALJ must consider whether the testimony and claims of disability are consistent with the record as a whole. See 20 C.F.R. § 416.929(c). In formulating the RFC, the ALJ must not "assess an individual's overall character or truthfulness." SSR 16-3p, 2017 WL 5180304, *11. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The overall credibility decision may be upheld even if not all of the ALJ's reasons for rejecting a plaintiff's testimony are upheld. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004). Here, the ALJ provided clear and convincing reasons to reject plaintiff's testimony.

Plaintiff argues the ALJ wrongfully discredited her testimony regarding her impairments and their limiting effects. Pl.'s Br. at pp. 2-13 (doc. 12). The ALJ determined "[plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [plaintiff's] statements concerning the intensity, persistence and limiting

Page 6 – ORDER

effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." Tr. 24. Further, the ALJ reasoned plaintiff's "activities are indicative of a wider range of exertional abilities than claimed in [her] testimony and other statements." Tr. 25.

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir, 2014). Here, the ALJ noted plaintiff travelled multiple times during the period at issue, despite listing long distance travel as a physical limitation. Tr. 25, 195. In 2010, 2011, 2014, and 2015, plaintiff attended a music camp and even went on a concert tour through Washington and Oregon. Tr. 355, 369, 395, 429. In 2014, plaintiff also attended a family reunion on the East Coast. Tr. 429. The ALJ may properly discount a plaintiff's testimony about the extent of her pain and limitations based on her ability to travel. See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008).

The ALJ also found plaintiff's pain symptom testimony inconsistent with her reports of gardening and "exerting herself" while doing home demolition. Tr. 25. In plaintiff's function report, she stated she is no longer able to garden "extensively." Tr. 195. However, a chart note by chiropractor Adams states plaintiff was engaging in "too much gardening," which is contrary to plaintiff's report of limitations. Tr. 356. Moreover, plaintiff stated at the hearing she is only able to perform basic maintenance on her house, despite Dr. Schaffer's chart note stating plaintiff was, "exerting herself [by conducting] demolition at home." Tr. 48, 280. While plaintiff's testimony about her activities may be subject to more than one interpretation, the ALJ's interpretation is entitled to deference if it is reasonable. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ reasonably found plaintiff's ability to travel, garden, and "exert herself"

while doing home demolition demonstrated that her symptoms are not consistent with her testimony and other evidence. See Ghanim, 763 F.3d at 1165.

Further, the ALJ determined the pain levels plaintiff reported to her treatment providers was inconsistent with the degree of limitation she alleged. Tr. 24. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle v. Comm'r, SSA, 533 F.3d 1155, 1161 (9th Cir. 2008). Contrary to plaintiff's testimony that over the past four to five years her pain level has been "significantly disruptive," the ALJ relies on various medical records describing plaintiff's pain levels as mild to moderate. Tr. 24-25, 45.

In 2010, plaintiff described her pain level as a five out of ten but "typically her pain levels are much lower." Tr. 272. In 2011, plaintiff said her pain level was a four, but during her most recent flare-up her pain level was a seven. Tr. 271. In 2012, plaintiff again stated her pain level was a four. Tr. 270. In 2014, plaintiff reported her pain level at a three to four. Tr. 464. In March 2015, plaintiff told Dr. Weller her pain level was currently a four but could get as high as an eight with flare-ups. Tr. 462. In October 2015, plaintiff reported her pain as a four. Tr. 458. In January 2016, plaintiff told her chiropractor her pain level was a four. Tr. 409. Taking this evidence into consideration, the ALJ provided clear and convincing reasons that while plaintiff experienced periods of pain, the levels reported to her treatment providers were not consistent with her alleged degree of impairment.

## II. Medical Opinion Evidence

Plaintiff contends the ALJ erred by failing to provide legally sufficient reasons to discount the opinions of Drs. Bennett, Weller, and Schaffer, as well as chiropractor Adams. Pl.'s Br. at p. 13 (doc. 12). To reject the uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reason that are supported by substantial evidence. Bayliss v.

Page 8 – ORDER

Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citations omitted). If a doctor's opinion is contradicted by another doctor's opinion, it may be rejected by a specific and legitimate reason. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." Id.

### A. Dr. Bennett

In November 2001, Dr. Bennett, a rheumatologist, diagnosed plaintiff with fibromyalgia and significant myofascial pain involving the right-shoulder and right upper quadrant of the back. Tr. 263. Dr. Bennett determined plaintiff had sixteen of eighteen positive tender points and found plaintiff should minimize "repetitive use of the right upper arm and shoulder and would benefit from being in a more supervisory position." Tr. 264, 265. Dr. Bennett stated, "such repetitive uses would include: sustained and focused use of a computer keyboard, the use of a computer mouse, sustained writing and any other repetitive activities performed in static positions which involve the use of her right upper extremity." Tr. 264.

Plaintiff argues the ALJ improperly rejected critical aspects of Dr. Bennett's opinion and failed to provide legally sufficient reasons for rejecting his opinion. Pl.'s Br. at p. 15 (doc. 12). The ALJ reasoned, "due to the remote nature and lack of specific limitations in terms of exertion or other provisions that could form the basis of a [RFC]," Dr. Bennett's opinion is afforded "little weight." Tr. 26.

"[A]n ALJ errs when [she] rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it . . . ." Garrison v. Colvin, 759 F.3d 995, 1012-13 (9th Cir. 2014). The ALJ appears to have accepted Dr. Bennett's fibromyalgia diagnosis as "severe" but rejected his opinion as to the functional limitations flowing therefrom. Tr. 21. The ALJ offered

no explanation for why these specific limitations should not be included in the RFC. The ALJ erred by failing to provide sufficient reasons to discount Dr. Bennett's opinion.

B.  Dr. Weller

Dr. Weller, a pain management specialist, treated plaintiff on an annual basis for thirteen years up until the date of the hearing. Tr. 266, 269-275, 457-66, 525, 527, 537. Dr. Weller has continued to document multiple positive fibromyalgia tender points in more recent years. Tr. 21. In 2003, Dr. Weller indicated plaintiff was not released to regular work and her work was limited to four to six hours a day, twenty hours per week. Tr. 26, 266. Plaintiff testified these limitations remain in place today. Tr. 25-26, 49.

Plaintiff contends the ALJ erred by giving "little weight" to Dr. Weller's opinion. Pl.'s Br. at p. 15 (doc. 12). The ALJ reasoned that Dr. Weller's opinion is "remote in nature and lacks specific limitations in terms of plaintiff's exertion." Tr. 26. In the questionnaire filled out by Dr. Weller, she indicated plaintiff could work twenty hours a week but provided no explanation for that limitation. Tr. 266. Because Dr. Weller's opinion failed to explain specific limitations in support of her conclusion regarding plaintiff's ability to work, the ALJ did not err in this respect.[2]

C.  Dr. Schaffer

A 2013 statement by Dr. Schaffer found plaintiff, "cannot sustain any of the physical abilities required of an Oregon worker," and she "has limited ability to sustain the cognitive skills required of Oregon workers." Tr. 276. He asserted "[s]he should be considered completely disabled." Id. In November 2014, another statement by Dr. Schaffer asserted plaintiff was

---

[2] As discussed below, a remand is necessary to address the limitations assessed by Dr. Bennett. Upon remand, the parties may seek to develop the record regarding Dr. Weller's opinion concerning plaintiff's RFC.

Page 10 – ORDER

"unable to maintain any physical activity nor any mental activity such as concentrating, persisting, etc. for an 8 hour a day 5 days a week job." Tr. 388. In addition, due to plaintiff's Oregon Health Plan insurance requirements, Dr. Schaffer saw plaintiff only for "seasonal ailments." Id.

Plaintiff contends the ALJ erred in discrediting Dr. Schaffer's opinion by not considering the length of the treating relationship, supportability of the opinion, or consistency with the record as a whole. Pl.'s Br. at p. 17 (doc. 12). The ALJ provided three reasons for giving only minimal weight to Dr. Schaffer's opinion: (1) his statements are conclusory; (2) he fails to identify specific limitations that could be incorporated into a residual functional capacity; and (3) the medical record fails to establish plaintiff has mentally based limitations that would prevent performance of work on a regular basis. Tr. 26.

An ALJ "may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the medical record as a whole or by objective medical findings." Batson, 359 F.3d at 1195 (citations omitted). A physician's opinion is conclusory if it is unsupported by a rationale or treatment notes and offers no objective evidence to support a diagnosis. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

A physician's report should demonstrate how plaintiff's symptoms translate into specific functional deficits which preclude work activity. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). An ALJ does not err by giving minimal weight to a treating physician's opinion when the physician failed to assign any specific limitations to a plaintiff's ability to work. Youngblood v. Berryhill, 2018 WL 2409398, *1 (9th Cir. May 29, 2018).

First, Dr. Schaffer's opinion that plaintiff is completely disabled and cannot sustain the physical or mental skills required for an Oregon worker are conclusory and unsubstantiated by

Page 11 – ORDER

relevant medical documentation. The ALJ is not required to accept Dr. Schaffer's opinion that plaintiff was completely disabled because the ultimate issue of disability is reserved for the Commissioner. Boardman v. Astrue, 286 Fed. Appx. 397, 399 (9th Cir. 2008).

Second, Dr. Schaffer failed to identify specific limitations as to why plaintiff is unable to engage in full-time employment. Dr. Schaffer merely stated plaintiff lacks the physical or mental ability to do so, such as an inability to concentrate or persist through a forty-hour work week. Dr. Schaffer did not provide any specific limitations concerning plaintiff's ability to concentrate or persist; and his report did not document any objective findings supporting plaintiff's marked physical or mental limitations.

Finally, Dr. Schaffer's opinion is unsupported by the record as a whole. The medical evidence fails to establish how any mental limitations result in disability based on plaintiff's fibromyalgia, chronic fatigue, and sarcoidosis. Moreover, Dr. Schaffer did not indicate which medical evidence he relied upon when reaching such conclusion, nor did he provide his own objective findings. Thus, Dr. Schaffer's opinion, when considered in the context of the evidence in the record, does not indicate the extent of plaintiff's limitations. The ALJ did not err in giving minimal weight to Dr. Schaffer's opinion.

### D. Chiropractor Adams

In January 2014, chiropractor Laura Adams reported she had treated plaintiff since 2000. Tr. 314-15. Ms. Adams stated plaintiff "has difficulty with weight-bearing for more than 45 minutes at a time." Tr. 314. She further opined plaintiff "can walk for around 45 minutes, but only if the surface is flat and predictable" and "stairs are a challenge for her." Id. In addition, she found plaintiff "can lift no more than 10 pounds and carry that only a short distance." Id. Ms. Adams indicated plaintiff had "chronic pain syndrome, unrelenting headaches, and easy

fatigability while devoting a considerable portion of her energies to self care and maintaining her relatively simple living circumstances." Tr. 315. Ms. Adams concluded "while [plaintiff] is able to interact, communicate and exercise good judgment, her capacities are limited by the nature of her physical condition." Id.

Plaintiff argues the ALJ erred in rejecting Adams' opinion. Pl.'s Br. at pp. 17-18 (doc. 12) The ALJ reasoned that Ms. Adams' opinion is afforded minimal weight because her treatment notes were based largely on plaintiff's subjective complaints without documentation of objective findings. Tr. 26. Moreover, the ALJ determined "[t]he medical record as a whole fails to show the [plaintiff] would be unable to lift more than 10 pounds, and the ability to bear weight for 45 minutes at a time is consistent with the standing and walking typically required of light exertional work." Tr. 26-27.

"In addition to considering the medical opinions of doctors, an ALJ must consider the opinions of medical providers who are not within the definition of "acceptable medical sources." Revels v. Berryhill, 874 F.3d 648, 655 (8th Cir. 2017). An ALJ may give less deference or reject the testimony of a non-acceptable medical source, such as a chiropractor, by providing reasons germane to that witness.[3] Molina, 674 F.3d at 1111.

A physician's opinion of disability based to a large extent upon the plaintiff's own subjective complaints and limitations may be disregarded where those complaints have been properly discounted by the ALJ. Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989). "This is particularly true in the case of fibromyalgia, a disease that is 'diagnosed entirely on the

---

[3] Plaintiff initiated her claim on September 12, 2013. Tr. 147-48. Claims for disability insurance benefits initiated before March 27, 2017 categorizes chiropractors as non-acceptable medical sources.

Page 13 – ORDER

[plaintiff's] reports of pain and other symptoms.'" Reinertson v. Barnhart, 127 Fed. Appx. 285, 290 (9th Cir. April 1, 2005) (quoting Benecke, 379 F.3d at 590).

It was reasonable for the ALJ to discount Ms. Adams' opinion because it was not based on clinical or objective findings, but instead, was based primarily on plaintiff's subjective complaints. Because the ALJ discredited plaintiff's subjective testimony as to her pain, the ALJ properly discredited Ms. Adams' opinion.

It is a specific and legitimate reason to reject a chiropractor's opinion when the opinion is incongruent with the chiropractor's medical records. Tommasetti, 533 F.3d at 1041. Ms. Adams' medical records did not provide support for the limitation reported in her statement, nor was it consistent with the records provided by other medical sources. The ALJ properly rejected Ms. Adams' opinion because the medical record as a whole fails to show plaintiff would be unable to lift ten pounds.

### III.  Lay Witness Testimony

Plaintiff contends the ALJ erred in rejecting the lay testimony of Julianne B., Karin Clarke, Heather McBride, and Wesley and Sharry Lackman. Pl.'s Br. at pp. 18-20 (doc. 12). The ALJ must take into account lay testimony as to the severity of a plaintiff's symptoms. Nguyen v. Charter, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ may only discount lay witness testimony by providing "reasons that are germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). The reasons must be specific to each witness. Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009).

One germane reason to reject lay testimony is if it is inconsistent with medical evidence. Bayliss, 427 F.3d at 1218. Additionally, the ALJ may reject lay witness testimony if it is

substantially similar to a plaintiff's validly discredited allegations. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009).

### A. Juilanne B.

Julianne B., plaintiff's daughter, completed a function report in December 2013, reporting she sees her mother two to three times a week for meals, visits, short walks, and occasionally to watch tv and movies. Tr. 209. Ms. B. reported plaintiff suffered from the same impairments and symptoms as reported by plaintiff in her testimony and function report. Id. In February 2016, Ms. B. submitted a statement indicating she has to help her mother with various chores including mowing the lawn, carrying heavy loads, vacuuming, and "fixing things." Tr. 252. She further indicated her mother was unable to travel due to her IBS and she was unable to lift and carry her grandchild for more than a short period of time. Id.

Plaintiff argues the ALJ erred by failing to properly credit Ms. B.'s testimony. Pl.'s Br. at pp. 18-20 (doc. 12). The ALJ found Ms. B.'s statement not fully consistent with the medical and other evidence in the record. Tr. 24.

If an ALJ gives germane reasons for rejecting the plaintiff's testimony, those reasons are equally germane to similar testimony by a lay witness. Valentine, 574 F.3d at 694. Ms. B.'s statements were similar to the validly rejected portion of plaintiff's testimony. Ms. B. stated her mother is no longer able to travel; however, as stated above, plaintiff took several trips during the period at issue. Tr. 355, 369, 395, 429. Because the ALJ discredited plaintiff's testimony about her activities, the ALJ provided a germane reason for discrediting Ms. B.'s testimony about plaintiff's activities.

**B.     Karen Clarke**

Karen Clarke, plaintiff's former employer, submitted a statement in January 2016. Tr. 250-51. Ms. Clarke stated plaintiff was employed by her from August 2005 to October 2009. Tr. 250. Ms. Clarke reported plaintiff required several breaks, and that computer work became "very taxing" for her. Id. She further stated the social aspect of working in a gallery was "taxing" on plaintiff. Id. Ms. Clarke indicated plaintiff needed extended time off when she had a respiratory illness and required assistance with jobs such as vacuuming or painting. Id. Moreover, Ms. Clarke reported plaintiff could not work Saturdays after working a first Friday art walk because of exhaustion. Id. Due to these issues, Ms. Clarke terminated plaintiff. Id.

Plaintiff contends the ALJ failed to properly weigh Ms. Clarke's testimony. Pl.'s Br. at pp. 18-20 (doc. 12). The ALJ reasoned that while Ms. Clarke eventually terminated plaintiff, she nonetheless was able to work several years in a substantially gainful capacity with the same conditions she now alleges are disabling. Tr. 24.

"An ALJ does not err in considering whether a [plaintiff] has formerly worked with the same symptoms now described as disabling." Jacobson v. Berryhill, 2017 WL 6016338, *16 (W.D. Wash. Dec. 4, 2017). Ms. Clarke's report of plaintiff's limitations while employed by her are substantially similar to plaintiff's description of her own symptoms. Plaintiff worked over four years with her allegedly debilitating symptoms, and while the plaintiff was employed prior to the alleged onset date, the symptoms she experienced are substantially similar to the impairments she complains of now. The ALJ reasonably used Ms. Clarke's description of plaintiff's past work to find her impairment would not prevent her from returning to this type of work. Thus, the ALJ did not err in rejecting Ms. Clarke's testimony.

### C. Heather McBride and Wesley & Sharry Lackman

Heather McBride, a friend and neighbor, provided a statement in 2016. Tr. 247. She reported plaintiff appeared to have difficulty with activities, such as carrying groceries and with household chores, such as vacuuming and moving furniture. Id. Ms. McBride referred to her professional experience as a human resources administrator as the basis for asserting she "knew the plaintiff would be unable to hold a job." Id.

In addition, Wesley and Sharry Lackman, friends and neighbors, each submitted a statement in January 2016. Tr. 248-249. Both reported that due to her fibromyalgia, plaintiff was often "incapacitated" for a week or more at a time and was unable to go on walks or to events. Id.

Plaintiff argues the ALJ failed to properly credit the statements of Heather McBride, and Wesley and Sharry Lackman. Pl.'s Br. at pp. 18-20 (doc. 12). The ALJ concluded the behavior observed by these third parties was not fully consistent with the medical or other evidence. The ALJ also noted the plaintiff's "friends are understandably sympathetic and therefore [may] be apt to overstate plaintiff's functional limitations on her behalf." Tr. 24.

While the ALJ found these third-party testimonies not fully consistent with the record, she failed to identify any inconsistencies between those third-party testimonies and the medical record. Additionally, the ALJ's statement that the witnesses are apt to overstate functional limitations suggests the witnesses are biased. In order to discredit a third-party statement for bias, an "ALJ must point to evidence that the third party exaggerated symptoms in order to procure benefits." Caldwell v. Astrue, 804 F. Supp. 2d 1098, 1104 (D. Or. 2011) (citing Bruce, 557 F.3d at 1116). Here, the ALJ offered no evidence of bias other than the witnesses' relationship with

plaintiff. Thus, the ALJ did not provide germane and specific reasons for discounting the testimonies of Ms. McBride and Wesley and Sharry Lackman.

### IV. Remand for Further Proceedings

The ALJ erred with respect to Dr. Bennett's opinion and the lay witness testimony of Ms. McBride, and Wesley and Sharry Lackman. The Court cannot confidently conclude the ALJ's errors were harmless because the ALJ did not take into consideration the specific limitations set forth in the opinions.

Plaintiff argues the court should remand for payment of benefits. The Court declines to do so. Although the ALJ failed to provide legally sufficient reasons for rejecting the opinion of lay witnesses and Dr. Bennett, the record requires further development as to the probative value of the opinions with respect to plaintiff's ability to work. Because a remand for further proceedings is necessary, a remand for payment of benefits is not warranted. Treichler v. Comm'r of SSA, 775 F.3d 1090, 1100, 1105 (9th Cir. 2014) (quoting Hill v. Astrue, 698 F.3d 1153, 1162 (9th Cir. 2012)) (internal quotation marks omitted).

## CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

DATED this 20th day of July 2018.

    s/ Jolie A. Russo
    JOLIE A. RUSSO
    United States Magistrate Judge